**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SELENA NORRIS,

      Plaintiff,                        Case No.

v.                                       Hon.

MEIJER GREAT LAKES LIMITED PARTNERSHIP
and FARB MASHHOURI,

      Defendants.

---

Fabiola A. Galguera (P84212)
NACHTLAW, P.C.
Attorneys for Plaintiff
501 Avis Dr., Ste 3
Ann Arbor, Michigan 48108
(734) 663-7550
fgalguera@nachtlaw.com

---

**COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, SELENA NORRIS ("Plaintiff"), by and through her attorneys, NACHTLAW, P.C., hereby alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.    This is an action for sex discrimination, religious discrimination, retaliation, and hostile work environment in violation of Title VII, 42 U.S.C. § 2000e and sex discrimination, religious discrimination, retaliation, and hostile work environment in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA").

1

2.      Plaintiff, Selena Norris (hereinafter referred to as "Norris"), is female and an openly devout and practicing Christian.

3.      During the events alleged herein, Plaintiff was a resident of Mecosta County, Michigan.

4.      Defendant Meijer Great Lakes Limited Partnership (hereinafter referred to as "Defendant Meijer") is a domestic limited partnership incorporated under the constitution and laws of the State of Michigan.

5.      During the events alleged herein, Plaintiff was employed by Defendant Meijer as an Assistant Product Development and Design Manager.

6.      Defendant Farb Mashhouri (hereinafter referred to as "Mashhouri") is an employee of Defendant Meijer and was Ms. Norris' direct supervisor.

7.      This Court has jurisdiction pursuant to 42 U.S.C. § 2000e (sex and religious discrimination, retaliation, and hostile work environment); 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1343(a)(4) (jurisdiction over civil rights claims). This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims of sex discrimination, religious discrimination, retaliation, and hostile work environment in violation of the Elliott-Larsen Civil Rights Act, MCLA 37.2101, et seq. (ELCRA).

8.      Venue is proper in this Court under 28 U.S.C. § 1391 and 29 U.S.C. § 621 et seq. as this is the judicial district in which the unlawful employment practices

occurred, the relevant employment records are kept, and Defendant Meijer's principal place of business is located.

9.    Defendant Meijer is an employer and Plaintiff is an employee within the meaning of Title VII and the ELCRA.

10.    Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and alleging retaliation, discrimination on the basis of her sex (female) and religion (Christian), and constructive discharge.

11.    Plaintiff's charges were filed within 300 days of the commission of the unlawful employment practices alleged in this claim.

12.    The EEOC sent Plaintiff her notice of right to sue on or about September 24, 2025.

13.    Plaintiff filed her original complaint within 90 days of receiving the notice of rights.

## STATEMENT OF FACTS
### Plaintiff Experiences Sexual Harassment at Meijer

14.    Plaintiff first joined Defendant Meijer's team on January 31st, 2022, as an Assistant Product Development and Design Manager.

15.    Plaintiff met and even exceeded the expectations set forth for her; in fact, she was told that she was on track for leadership positions.

16.     That all came to a screeching halt when she was switched to Defendant Mashhouri's team in November of 2022.

17.     Plaintiff's official title was Assistant Product Development and Design Manager.

18.     From her very first *day* on his team, it was clear that Defendant Mashhouri had an issue with Plaintiff—issues with immutable characteristics of Plaintiff's very being.

19.     In addition to being a woman, Plaintiff is a devout Christian, a fact that was made known to Defendant Mashhouri.

20.     From the moment Plaintiff asked Defendant Farb - respectfully - if he could avoid swearing using Jesus Christ's name in front of her, Defendant Mashhouri took a particular dislike to Plaintiff.

21.     In Plaintiff's presence, Defendant Mashhouri made comments like "women are better at certain tasks" and "women are better multitaskers" when assigning tasks to Plaintiff he did not want to do himself, typically administrative tasks despite her assistant manager role.

22.     Defendant Mashhouri made a point of giving Plaintiff tasks he deemed "womanly."

23.   Regarding religion, Defendant Mashhouri not only ramped up his use of Jesus Christ's name when swearing, he began to *monitor* what Plaintiff did *during her breaks and lunch*.

24.   During breaks and lunch, Plaintiff would engage in religious meditation or Bible study.

25.   *At no point* did Plaintiff engage in any kind of proselytizing; in fact, she was engaging in her practice alone.

26.   Defendant Mashhouri began to make comments that he needed to video and/or audio-record Plaintiff to "make sure she was working."

27.   Defendant Mashhouri began to make these comments after seeing her using her break time for religious purposes.

28.   It was clear that Defendant Mashhouri's assessments regarding Plaintiff's work were tainted by sex, gender, and religious bias.

29.   Defendant Mashhouri made this clear to Plaintiff during a particular reprimand incident where Defendant Mashhouri was disciplining Plaintiff for a purported work issue.

30.   When Plaintiff challenged Defendant Mashhouri to explain what he was reprimanding her for, he simply noted that Plaintiff needed to be "humbled."

31.   Upon reasonable belief, Defendant Mashhouri did not make similar comments to male coworkers.

5

32.     By January 30, 2023, Plaintiff decided it was time to make Defendant Meijer aware of the harassment and disparate treatment she was experiencing.

33.     Plaintiff first mentioned her concerns to Janet Baluyot-Wilson, Product Development Softline Director.

34.     Plaintiff expected an investigation process or a conversation regarding the treatment she was experiencing.

35.     Instead, Plaintiff somehow ended up being on the receiving end of a reprimand for reporting the conduct.

36.     Ms. Baluyot-Wilson *blamed* Plaintiff for what she was experiencing, saying "[Plaintiff was] not the victim."

37.     Ms. Baluyot-Wilson even insinuated that perhaps Plaintiff *deserved* the harassment she was experiencing.

38.     Plaintiff attempted to put the situation behind her, hoping that peace would come if she just kept her head down and did the work.

39.     Unfortunately, despite her attempts at placative obedience, Defendant Mashhouri continued his discriminatory behavior.

40.     Plaintiff, feeling increasingly without option, revisited the complaint she had previously filed with human resources, detailing new incidents of discrimination and witnesses who could attest to their occurrence.

41.     Defendant Mashhouri was notified by Defendant Meijer employees about Plaintiff's complaint, leading to retaliation and escalated discriminatory treatment.

42.     Upon being made aware that Ms. Norris had made a complaint about his discriminatory behavior, Defendant Mashhouri suddenly decided that he too had complaints about Plaintiff's productivity and speed.

43.     However, unlike Plaintiff's complaints against him, Defendant Mashhouri's complaints about Plaintiff were wholly pretextual, and required a degree of fabrication.

44.     In service of creating pretext, Defendant Mashhouri assigned Plaintiff tasks with arbitrarily chosen but completely impossible deadlines.

45.     Defendant Mashhouri began to regularly give Plaintiff extensive lists of tasks on Fridays, all with Monday deadlines.

46.     Defendant Mashhouri knew that in order to meet these deadlines Plaintiff would have to work through the weekends, including her Sunday church services.

47.     Plaintiff reminded Defendant Mashhouri that weekends were not considered work hours under her employment agreement and *repeatedly* explained that she could not work over the weekend, as she observed the Sabbath and attended church on Sundays.

48.    But Defendant Mashhouri did not care.

49.    In fact, he obstinately refused to move the Monday deadlines he imposed on assignments he assigned to Plaintiff on Friday evenings, despite there being no external pressure.

50.    As a result, Plaintiff was forced to make the impossible choice between staying true to her faith and putting food on the table.

51.    Defendant Mashhouri knew that he was interfering with Plaintiff's religious practices and set deadlines with explicit purpose of interfering with them.

52.    In furtherance of the pretextual narrative he was constructing about Plaintiff's poor performance, Defendant Mashhouri began to regularly send false emails indicating his "disappointment" in Plaintiff's work without giving any constructive criticism.

53.    As if to make a mockery of Plaintiff's experience, Defendant Mashhouri sent an email to Plaintiff stating that she needed to let him know if she had concerns about deadlines.

54.    The purpose of this email was entirely pretextual, as Defendant Mashhouri continued to ignore Plaintiff's repeated verbal requests.

55.    Defendant took further affirmative actions to make it impossible for Plaintiff to work.

56.    Defendant Mashhouri began to cancel or fail to attend scheduled meetings.

57.    Defendant Mashhouri began to make it impossible for Plaintiff to even speak to him.

58.    For example, Plaintiff asked him on or about June 2, 2023, if Defendant Mashhouri was taking a half day on June 2nd because Plaintiff wanted to plan her workday in case he would not be available.

59.    Defendant Mashhuri's response? Simply that he would not be giving her an answer.

60.    When Plaintiff calmly asked why Defendant Mashhouri would not be answering, he responded, "I appreciate if you will focus on your job. You are interrupting me. I have very much to do."

61.    This became the new normal: Plaintiff being both shut out and accused of not communicating.

62.    HR had Plaintiff's allegations and purportedly was "investigating" Plaintiff's concerns; it is unclear how an investigation could be ongoing when Plaintiff was not given a substantive opportunity to engage and despite her constant updates about the harassment.

63.    With HR's alleged investigation, Defendant Mashhouri's harassment only continued to escalate.

64.    Defendant Masshouri disciplined Plaintiff for increasingly inane and asinine reasons, taking issue not only with the way Plaintiff spoke, but even with the way she *typed*.

65.    Defendant Masshouri would purposely drop piles of documents and samples as close as possible to Plaintiff's desk - sometimes completely unrelated to what Plaintiff was working on – just to clutter her workspace.

66.    When Plaintiff picked up the mess, Defendant Mashhouri reprimanded her for picking up.

67.    Defendant Mashhouri attacked every aspect of Plaintiff's workday in retaliation for her complaints, complaints with which Defendant Meijer did absolutely nothing.

68.    When his efforts to break Plaintiff's resolve failed to yield results, Defendant Mashhouri began a campaign to ostracize Plaintiff from her coworkers.

69.    Defendant Mashhouri instructed Plaintiff's coworkers not to speak to her or *even make eye contact with her*.

70.    It  became nearly impossible for Plaintiff to do her work.

71.    Defendant Mashhouri escalated his harassment so that Plaintiff no longer felt safe in the workplace.

72.    Defendant Mashhouri began to make it a point to corner and isolate Plaintiff.

73.    To show his disapproval, Defendant Mashhouri would vacillate between yelling at Plaintiff, pinning her inside her cubicle, or sneaking up behind Plaintiff and whispering intimidatingly into her ear, pinning her to her desk.

74.    Defendant Mashhouri increasingly kept Plaintiff after hours, leaving her to work with him alone even though Plaintiff's coworkers were regularly allowed to work from home to finish tasks.

75.    Defendant Mashhouri did not respect Plaintiff's time away from the office, texting her at all hours of the day.

76.    Defendant Mashhouri knew the impact his conduct was happening.

77.    Seemingly to protect himself, Defendant Mashhouri threatened to ruin her reputation in the industry should she continue with her complaints.

78.    Plaintiff's fears reached an all-time high when Defendant Mashhouri began to *regularly follow her to the bathroom*.

79.    Plaintiff caught Defendant Mashhouri waiting for her outside the women's bathroom multiple times.

80.    Plaintiff never observed Defendant Mashhouri engaging in such conduct with her male or non-Christian female coworkers.

81.    No matter the incidents and fears Plaintiff communicated to Defendant Meijer, HR did nothing to protect her.

82. Plaintiff was told her allegations were investigated and that there was nothing to be done.

83. Plaintiff knew this to be false; multiple coworkers had independently reported Defendant Mashhouri's harassment of Plaintiff to HR and still more had been listed as witnesses to incidents of discrimination on each of Plaintiff's own complaints to Defendant Meijer.

84. And yet, not a single witness was interviewed by HR in the course of Defendant Meijer's "thorough" investigations.

85. By August of 2023, Plaintiff simply did not feel safe in the workplace; in fact, it was unbearable.

86. Between Defendant Meijer's proven disinterest in protecting her and Defendant Mashhouri's escalating behavior, Plaintiff's working conditions were intolerable, and she was constructively discharged.

87. Plaintiff submitted her resignation on August 18, 2023.

88. Plaintiff was left severely damaged; she has not been able to find comparable work in the design industry.

89. Plaintiff now lives with a level of anxiety she had never felt before.

90. But for her religion and gender, Plaintiff would not have been treated differently from her coworkers.

91.     But for exercising her rights to oppose discrimination, Plaintiff would not have experienced additional disparate treatment and retaliation.

92.     But for Defendant Mashhouri's incessant harassment and Defendant Meijer's complete disregard for her concerns, Plaintiff would not have left her job.

93.     No reasonable person would withstand the harassment to which Plaintiff was subjected.

**COUNT I**
**SEX DISCRIMINATION IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C § 2000e**
*(As to Defendant Meijer Only)*

94.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

95.     At all relevant times, Defendant Meijer was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

96.     Plaintiff is a member of a protected class as a female.

97.     Defendant Meijer's actions were motivated by unlawful discrimination against Plaintiff because of her sex.

98.     Defendant Meijer subjected Plaintiff to adverse employment actions, including but not limited to constructive discharge because of her sex.

13

99.    As a direct and proximate result of Defendant Meijer's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

100.    Defendant Meijer's conduct was done with malice and reckless indifference to Plaintiff's federally protected civil rights, entitling her to punitive damages.

**COUNT II**
**RELIGIOUS DISCRIMINATION IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C § 2000e**
*(As to Defendant Meijer Only)*

101.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

102.    At all relevant times, Defendant Meijer was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

103.    Plaintiff is a member of a protected class as a Christian.

104.    Defendant Meijer's actions were motivated by unlawful discrimination against Plaintiff because of her religion.

14

105.   Defendant Meijer subjected Plaintiff to adverse employment actions, including but not limited to constructive discharge because of her religion.

106.   As a direct and proximate result of Defendant Meijer's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

107.   Defendant Meijer's conduct was done with malice and reckless indifference to Plaintiff's federally protected civil rights, entitling her to punitive damages.

**COUNT III**
**RETALIATION IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C § 2000e**
*(As to Defendant Meijer Only)*

108.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

109.   At all relevant times, Defendant Meijer was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

110.  Plaintiff engaged in conduct protected by Title VII's unlawful employment practices provision including opposing discrimination perpetuated by

15

Defendant Mashhouri and filing a complaint with Defendant Meijer's internal HR department alleging discrimination and harassment based on her sex and religion.

111.   But for Plaintiff's complaint of gender and religious discrimination against Defendant Mashhouri, she would not have been forced to resign from Defendant Meijer.

112.   Defendant Meijer's actions constitute unlawful retaliation against Plaintiff because she engaged in a protected activity and was subjected to adverse employment actions, including but not limited to constructive discharge.

113.   As a direct and proximate result of Defendant Meijer's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

114.   Defendant Meijer's conduct was done with malice and reckless indifference to Plaintiff's federally protected civil rights, entitling her to punitive damages.

## COUNT IV
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C § 2000e
*(As to Defendant Meijer Only)*

115.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

16

116.   At all relevant times, Defendant Meijer was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

117.   Plaintiff is a member of a protected class as a female.

118.   Plaintiff is a member of a protected class as a Christian.

119.   During Plaintiff's employment, Defendant Meijer's employees and Defendant Mathis subjected Plaintiff to severe and pervasive unwelcome harassment and disparate treatment that was intended to and did substantially interfere with Plaintiff's employment.

120.   This unwelcome conduct created a hostile work environment based on Plaintiff's sex and religion.

121.   This conduct was objectively and subjectively such that a reasonable person would find it hostile or abusive.

122.   Plaintiff reasonably found this conduct to be offensive.

123.   Defendant Meijer had both actual and constructive notice that its employee, Defendant Mashhouri, had created a religious and sex-based hostile and offensive work environment for Plaintiff.

124.   Plaintiff opposed and appropriately reported the unwelcome and offensive conduct to Defendant Meijer.

125.   Defendant Meijer refused to take effective remedial action to stop the harassment.

126.   Defendant Meijer's actions were taken with reckless disregard for Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

127.   As a direct and proximate result of Defendant Meijer's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

**COUNT V**
**SEX DISCRIMINATION IN VIOLATION OF**
**ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2201 et seq.**
*(As to Defendant Meijer Only)*

128.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

129.   At all relevant times, Defendant Meijer was an employer and Plaintiff was an employee within the meaning of the Elliott-Larsen Civil Rights Act, MCL § 37.2101.

130.   Plaintiff is a member of a protected class because of her sex: female.

131. Defendant Meijer's actions were motivated by unlawful discrimination against Plaintiff because of her sex, including but not limited to her constructive discharge.

132. If not for Plaintiff's sex, she would not have been constructively discharged by Defendant Meijer.

133. Defendant Meijer's actions constitute unlawful discrimination against Plaintiff because of her sex in violation of MCL § 37.2202.

134. As a direct and proximate result of Defendant Meijer's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

## COUNT VI
## RELIGIOUS DISCRIMINATION IN VIOLATION OF
## ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2201 et seq.
*(As to Defendant Meijer Only)*

135. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

136. At all relevant times, Defendant Meijer was an employer and Plaintiff was an employee within the meaning of the Elliott-Larsen Civil Rights Act, MCL § 37.2101.

19

137.   Plaintiff is a member of a protected class because of her religion: Christian.

138.   Defendant Meijer's actions were motivated by unlawful discrimination against Plaintiff because of her religion, including but not limited to her constructive discharge.

139.   If not for Plaintiff's religion, she would not have been constructively discharged by Defendant Meijer.

140.   Defendant Meijer's actions constitute unlawful discrimination against Plaintiff because of her religion in violation of MCL § 37.2202.

141.   As a direct and proximate result of Defendant Meijer's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

**COUNT VII**
**RETALIATION IN VIOLATION OF**
**ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2701 et seq.**
*(As to Defendants Meijer and Mashhouri)*

142.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

143. At all relevant times, Defendant Meijer was an employer and Plaintiff was an employee and person, covered by and within the meaning of the Elliott-Larsen Civil Rights Act, MCL § 37.2101.

144. Plaintiff engaged in conduct protected by ELCRA's anti-retaliation provision including reporting harassment and filing a complaint Defendant Meijer's internal Human Resources department alleging discrimination and harassment based on her sex and religion.

145. Defendant Mashhouri was made aware of Plaintiff's complaint against him by Defendant Meijer, and retaliated against Plaintiff for opposing harassment and discriminatory treatment by harassing and intimidating her, changing her work assignments, and creating the conditions sufficient for a constructive discharge after she complained about his behavior to Defendant Meijer.

146. Defendant Meijer retaliated against Plaintiff for opposing harassment and discriminatory treatment by refusing to conduct an appropriate investigation and then allowing Defendant Mashhouri to continue his treatment of her unabated, thereby constructively discharging her.

147. Defendant Meijer and Defendant Mashhouri unlawfully retaliated against Plaintiff because of her protected conduct.

148. As a direct and proximate result of Defendants' wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and

21

Case 1:25-cv-01895-PLM-PJG    ECF No. 1,  PageID.22    Filed 12/23/25    Page 22 of 25

earning capacity; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

## COUNT VIII
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2701 et seq.
*(As to Defendant Meijer Only)*

149.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

150.   At all relevant times, Defendant Meijer was an employer, and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2201.

151.   Plaintiff is a member of a protected class as a female.

152.   Plaintiff is a member of a protected class as a Christian.

153.   During Plaintiff's employment, Defendant Meijer's employee, Defendant Mathis, subjected Plaintiff to severe and pervasive harassment and disparate treatment that was intended to and did substantially interfere with Plaintiff's employment.

154.   This unwelcome conduct created a hostile work environment based on Plaintiff's sex and religion.

22

155.   This conduct was objectively and subjectively such that a reasonable person would find it hostile or abusive.

156.   Plaintiff reasonably found this conduct to be offensive.

157.   Defendant Meijer had both actual and constructive notice that its employees and Defendant Mashhouri had created a religious and sex-based hostile and offensive work environment for Plaintiff.

158.   Plaintiff opposed and appropriately reported the unwelcome and offensive conduct to Defendant Meijer.

159.   Defendant Meijer failed to take effective remedial action to stop the harassment.

160.   As a direct and proximate result of Defendant Meijer's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

**COUNT IX**
**<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>**
*(As to Defendant Mashhouri)*

161.   Plaintiff incorporates the preceding allegations as if fully restated herein.

162. Defendant Mashhouri deliberately intimidated, demeaned, and harassed Plaintiff with the deliberate intent to punish her for filing a complaint against him, and effect her constructive discharge.

163. Defendant's actions materially harmed Plaintiff by denying her access to employment, unemployment benefits, and future employment, for the express purpose of causing her emotional distress.

164. Defendant's actions were willful and malicious.

165. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, loss of employment; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## RELIEF REQUESTED

For all of the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

a. Declare the practices and actions of Defendants as unlawful employment practices in violation of TITLE VII and Michigan's ELCRA;

b. Award compensatory damages for monetary and non-monetary loss in whatever amount she is found to be entitled;

c. Award exemplary damages in whatever amount she is found to be entitled;

d. Award lost wages and benefits, past and future, and front pay in whatever amount she is found to be entitled;

e. Award liquidated damages;

f. Award punitive damages in whatever amount she is found to be entitled;

g. Award interest, costs, and reasonable attorney fees; and

h. Award whatever other equitable relief this court finds appropriate.

## **DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff Selena Norris, by and through her attorneys,

NACHTLAW, P.C., hereby demands a trial by jury in the above-captioned matter

for all issues so triable.

Respectfully submitted,
NACHTLAW, P.C.

*/S/Fabiola Galguera*
Fabiola A. Galguera (P84212)
NACHTLAW, P.C.
Attorneys for Plaintiff
501 Avis Dr., Ste 3
Ann Arbor, Michigan 48108
(734) 663-7550
fgalguera@nachtlaw.com

Date: December 23, 2025

25